IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

BELINDA BALDWIN,

           Plaintiff,

vs.

INDEPENDENT SCHOOL DISTRICT
NO. 1 OF TULSA COUNTY,
OKLAHOMA,

           Defendant.

Case No. 15-CV-85-FHM

## OPINION AND ORDER

Defendant Tulsa School District's Motion for Summary Judgment is before the court for decision. [Dkt. 33]. The matter has been fully briefed. [Dkt. 33, 36, 37]. Plaintiff's sole remaining claim is against Independent School District No. 1 of Tulsa County (the District) under 42 U.S.C. §1983 for the alleged violation of procedural due process in connection with the suspension of her employment and her resignation. The District seeks summary judgment on that claim.[1]

## BACKGROUND

Dissatisfied with Plaintiff's job performance, the District Superintendent decided to seek Plaintiff's dismissal from her employment with the District. Plaintiff was suspended immediately with full pay and benefits and informed that the due process procedure for dismissal would be initiated, including Plaintiff's right to a hearing before the school board. At the same time, Plaintiff was given the option of resigning. If she resigned, she would

---

[1] Plaintiff initially asserted five claims against the District and an individual, Jessica Haight. Plaintiff alleged a claim for violation of her procedural due process rights under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. She also alleged four state law claims, which were dismissed by the court. [Dkt. 16]. The parties filed a Joint Stipulation of Partial Dismissal, wherein the remaining state law claim was dismissed with prejudice. [Dkt. 29].

receive pay and benefits through the end of the school year, but there would be no hearing and she would waive any and all claims against the District. After considering her options overnight, including consulting her partner and a financial advisor, Plaintiff resigned.

Plaintiff now claims that she was denied due process. The District responds that Plaintiff received all the process she was due before her suspension and that she freely and voluntarily waived her due process rights thereafter by resigning. For the reasons set forth herein, the court agrees with the District.

## LEGAL STANDARDS

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if the pleadings, affidavits and exhibits show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To survive a motion for summary judgment, the nonmoving party "must establish that there is a genuine issue of material fact" and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 1455-56, 89 L.Ed.2d 538 (1986). However, the factual record and reasonable inferences to be drawn therefrom must be construed in the light most favorable to the non-movant. *Gullickson v. Southwest Airlines Pilots' Ass'n*, 87 F.3d 1176, 1183 (10th Cir. 1996). When a motion for summary judgment is made and supported by evidence, the party opposing summary

judgment may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

## UNDISPUTED FACTS

The Court is required to view the facts in the light most favorably to the non-moving party, Plaintiff. *Gullickson*, 87 F.3d at 1183. Taken in that light, the material facts are as follows.[2]

Plaintiff was employed by the District as a principal at Eisenhower International Elementary School (Eisenhower) during the 2012-3013 and 2013-2014 school years under a certified administrator's contract which, under Oklahoma law entitled Plaintiff to certain due process prior to dismissal or nonreemployment.

In the 2012-2013 school year the District implemented the Tulsa Model of the state-mandated Teacher Leadership Education System (TLE). Plaintiff received training on the implementation of the TLE, including the required observation and evaluation timelines. The adequacy of Plaintiff's training is not an issue. Plaintiff was expected to follow the TLE evaluation process during the 2012-2013 and 2013-2014 school years.

Deficiencies in Plaintiff's evaluation of teachers and her implementation of the TLE at Eisenhower were addressed with Plaintiff on March 7, 2013, and April 12, 2013. On April 12, 2013, Plaintiff received and signed a Personal Development Plan (PDP) wherein the expectation was communicated that Plaintiff would adhere to all TLE processes and guidelines. The PDP addressed Plaintiff's failure to comply with the timeline and process

---

[2] Plaintiff asserted that some of the matters in the District's statement of undisputed facts are immaterial, but Plaintiff did not dispute any of factual matters set forth. Further, Plaintiff's own statement of facts does not demonstrate the existence of any dispute over the District's statement of facts.

of implementing the TLE and her less than candid reporting on the status of the TLE implementation. Plaintiff was advised that she would receive an "ineffective rating" on the indicator of "Organization and School Management: Teacher Observation and Evaluation" in her 2012-2013 evaluation. She was also informed that any repeat of such actions "would result in a recommendation for immediate dismissal." [Dkt. 33-8]. A follow-up of the PDP was completed and signed by Plaintiff on May 13, 2013. Plaintiff was found to have remedied her previous deficiencies. However, the follow-up report advised Plaintiff she was required to effectively complete the TLE process for the 2013-2014 school year, and failure to do so could be the basis for dismissal or nonreemployment.

During the 2013-2014 school year, on October 25, 2014, a goal setting plan was completed as part of the evaluation system for administrators. Among the goals was a directed goal for Plaintiff to encourage effective open and honest communication between and among teachers, staff, and the larger community. The directed goal advised that failure to comply or repetition of unsatisfactory performance could result in dismissal or nonreemployment at any time. Plaintiff received and signed another PDP on November 21, 2013, which was related to the directed goal and addressed untruthful and false information shared by Plaintiff. The PDP stated that failure to comply with the PDP or a repeat of unsatisfactory performance may result in dismissal or nonreemployment.

In her position as principal, Plaintiff was the sole TLE evaluator of certified staff at Eisenhower for the 2013-2014 school year. A report generated by the District showed that Plaintiff conducted at least 13 observation conferences under the TLE on December 20, 2013. The number of conferences performed in a single day raised concerns about whether the required amount of time was spent for each conference. An investigation was

conducted and certain teachers at Eisenhower were interviewed on January 14, 2014 and February 4, 2014. It was determined that Plaintiff had violated the state-mandated TLE process on more than one occasion. A recommendation was made to the District Superintendent that Plaintiff be suspended pending the initiation of a dismissal proceeding. The Superintendent made the decision to suspend Plaintiff. Immediate suspension was standard operating procedure for the District and immediate suspension was considered to be in the best interests of the children if there were grounds for potential termination.

On February 12, 2014, Plaintiff was presented with a suspension letter signed by the Superintendent. She was suspended, effective immediately with full pay and benefits. On February 12, 2014, Plaintiff was verbally made aware of the concerns about her non-compliance with the TLE. She was informed that a recommendation for dismissal would be forthcoming, and that she had the right to request a hearing before the District's Board of Education prior to dismissal. During the February 12, 2014 meeting, Plaintiff was given a choice to resign rather than pursue a hearing. She was presented with the Resignation Agreement during the February 12, 2014 meeting. She was informed that if she signed the Resignation Agreement she would be paid through the end of her contract period, or until June 30, 2014. Plaintiff requested until noon the next day, February 13, 2014, to make a decision with regard to the Resignation Agreement. Plaintiff consulted with her partner and a financial advisor and weighed the risk of being dismissed by the Board of Education at a due process hearing with the potential loss of salary and benefits. Plaintiff determined it was in her best interests to resign, which she did by signing the Resignation Agreement.

The Resignation Agreement provided that: Plaintiff's resignation was effective June 30, 2014; she would be on agreed administrative leave until that date; and she would receive her salary and benefits. The Resignation Agreement included a release of all claims against the District and a waiver of entitlement to a board hearing or due process rights to which Plaintiff would otherwise be entitled. Further, the Resignation Agreement provided that Plaintiff could rescind her resignation within seven days of signing it and that she had the opportunity to consult an attorney. The Resignation Agreement also included Plaintiff's representation that she entered into the agreement "freely and voluntarily."

Plaintiff received all of the salary and benefits due her under her contract through June 30, 2014. Plaintiff did not attempt to revoke her resignation at any time from the February 13, 2014, date of signing the Resignation Agreement through the June 30, 2014, effective date of her resignation.

## ANALYSIS

The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees that no state shall deprive any person of life, liberty, or property without due process of law. In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court determined that before a public employee who possessed a property interest in continued employment was dismissed, the employee was constitutionally entitled to oral or written notice of the charges against him or her, an explanation of the employer's evidence, and a pretermination opportunity for the employee to present his or her side of the story. In 70 Okla.Stat. § 6-101.13, the Oklahoma legislature mandated due process for dismissal or nonreemployment

of a certified school administrator, such as Plaintiff. *Hoerman v. Western Heights Bd. of Educ.,* 913 F.2d 684, 687-688 (10th Cir. 1995).

### Due Process in Connection With Plaintiff's Suspension

The parties agree that Plaintiff had a property interest in continued employment which entitled her to due process. Plaintiff argues that she was denied due process because she was suspended from her employment on February 12, 2014, without being provided *written* notice of the charges against her and without being provided a hearing. In *Pitts v. Board of Educ. of U.S. D. 305, Salina, Kansas,* 869 F.2d 555, 557 (10th Cir. 1989), the Tenth Circuit held that a two-day suspension of a school employee *with* pay did not deprive the employee of any measurable property interest. This court likewise finds that Plaintiff's suspension from February 12, 2014, until on or about noon on February 13, 2014, did not deprive her of any measurable property interest. Accordingly, no process was due prior to suspension under the circumstances.[3]

Furthermore, Plaintiff's suspension was conducted in accordance with Oklahoma law. 40 Okla.Stat. §60-101.14 provides:

> Whenever the local board of education or the administration of a school district has reason to believe that cause exists for the dismissal of an administrator, and when they are of the opinion that the immediate suspension of an administrator would be in the best interests of the children in the district, the local board of education or the superintendent of the school district may suspend the administrator without notice or hearing. However, the suspension of the administrator shall not deprive the administrator of any compensation or other benefits to which he or she would otherwise be entitled under his or her contract

---

[3] This conclusion eliminates the necessity of addressing Plaintiff's claim that oral notice of the reasons for her suspension, which Plaintiff does not dispute she received, was an insufficient means of satisfying due process.

> or pursuant to law. Within ten (10) days' time after such suspension becomes effective, the local board of education shall initiate proceedings pursuant to Section 6-102.4 of this title to have the administrator dismissed. However, in a case involving a criminal charge or indictment, such suspension may extend to such time as the administrator's case is finally adjudicated at a trial. Provided, however, such extension shall not include any appeal process.

The undisputed facts establish that the District's Superintendent was of the opinion that immediate suspension of Plaintiff's employment was in the best interests of the children of the District. In addition, Plaintiff's suspension was with pay, so she was not deprived of any compensation or benefits. The aspect of §6-101.14 that requires the initiation of dismissal proceedings within 10 days after a suspension becomes effective, was not applicable to Plaintiff's situation because Plaintiff signed the Resignation Agreement before the passage of the 10-day period.

### **Voluntariness of Plaintiff's Execution of the Resignation Agreement**

Again, the court notes there is no dispute that Plaintiff had a constitutionally protected property interest in her employment. *See* 70 Okla. Stat. 6-101.13 (establishing due process procedures for dismissal or nonreemployment of full-time certified school administrators), *Loudermill*, 470 U.S. at 538-539, 105 S.Ct. 1491. However, if an employee voluntarily resigns, she relinquishes her property interest. A resignation will not be voluntary, and the relinquishment of a property interest and the attendant due process will not be effective, where the totality of the circumstances indicate the employee did not have the opportunity to make a free choice. *Parker v. Board of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1162 (10th Cir. 1992). However, "[a] choice between resignation or termination does not establish that the resignation was involuntary, unless the employer lacked good

cause to believe that there were grounds for termination." *Id.*, *citing Stone v. University of Md. Medical Sys. Corp.,* 855 F.2d 167, 174 (4th Cir. 1988).

Plaintiff does not assert that the District lacked good cause to believe there were grounds for termination. She argues that her resignation was involuntary because she was handed the resignation agreement at the same time she received her suspension. She states that she was verbally informed that if she signed the Resignation Agreement, she would be reemployable by the District. She asserts that statement was false as the Resignation Agreement specifically state she would not be reemployable if she signed the Resignation Agreement. Plaintiff contends that the incorrect information was a material misrepresentation that vitiated the voluntariness of her resignation. Plaintiff states that the materiality of the question of reemployability by the District is demonstrated by the fact that with an additional year of employment, Plaintiff would be entitled to maximum retirement benefits. This fact, Plaintiff argues, signifies that her resignation was not voluntary and she concludes therefore that her resignation could not serve to cut off her due process rights. Plaintiff also relies on the provisions of the Older Workers' Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f)(1), which requires, among other things, a period of 21 days in which to consider a waiver of rights under the Age Discrimination in Employment Act (AEDA), 29 U.S.C. §§ 621-634. Plaintiff asserts these factors raise a question as to the voluntariness of her resignation and preclude summary judgment.

The statutory requirements for an effective waiver of rights contained in the OWBPA do not apply to all waivers of every right by an older worker. The language of the statute provides that the requirements apply only to waivers of age discrimination claims. 29 U.S.C. § 629(f)(1)(an individual may not waive any right or claim under this chapter unless

9

. . .)(emphasis supplied). Plaintiff has not alleged any claim of age discrimination. Therefore, although the Resignation Agreement includes a waiver of Plaintiff's rights under the ADEA which may not meet every requirement contained in the OWBPA, since Plaintiff has not alleged age discrimination the effectiveness of that aspect of Plaintiff's waiver of rights contained in the Resignation Agreement is not at issue.

The alleged oral misstatement about whether Plaintiff was reemployable by the District does not render Plaintiff's signing of the Resignation Agreement involuntary, or otherwise preclude summary judgment for the District. The Resignation Agreement contains the following provision:

> <u>Future Employment</u>. Employee agrees that henceforth Employee will never apply to nor seek employment in any capacity with the School District whether as an employee or independent contractor.

[Dkt. 33-22, p. 3, ¶ 7]. This provision is not hidden in the midst of a long string of other provisions and therefore difficult to locate. Nor is the provision written in convoluted language or otherwise difficult to understand. Further, Plaintiff does not allege that she failed to understand that the Resignation Agreement contains this provision. Further, the Resignation Agreement contained an acknowledgment that the Resignation Agreement comprised "the entire understandings, agreements and obligations of whatever nature or kind between the parties with regard to the resolution of Employee's employment status with the School District[.]" [Dkt. 33-22, p. 4, ¶ 8]. In addition, paragraph 9 of the Resignation Agreement recites the acknowledgment that Plaintiff entered in to the Resignation Agreement "freely and voluntarily." [Dkt. 33-22, p. 4, ¶ 9]. Furthermore, regardless of whether there is a possibility Plaintiff could have been mislead or confused

in light of the express language in the Resignation Agreement, the Agreement provided a period of seven days following Plaintiff's execution of the Agreement during which time she could revoke the agreement. [Dkt. 33-22, p. 3, ¶ 4]. Plaintiff did not attempt to revoke the agreement during the 7-day period. Moreover, except for the filing of this lawsuit on February 19, 2015, Plaintiff did not attempt to revoke the agreement at any later time.

Without providing any citation to retirement plan documents or literature, contractual documents, statutes, or other information that would lend credence to her statement, Plaintiff claims that if she had worked one more year at the District, her retirement benefits would be maximized. She asserts that, absent coercion, a reasonable person would not sign the Resignation Agreement which precluded her reemployment. The court finds that the status of Plaintiff's retirement benefits does not raise a question of fact as to the voluntariness of Plaintiff's resignation.[4] In an unpublished opinion, *Cacy v City of Chickasha, Oklahoma,* 1997 WL 537864 (10th Cir. 1997),[5] a panel of the Tenth Circuit addressed the issue of the existence of coercion or duress in relation to the voluntariness of a resignation. The Court stated that an employee must show egregious evidence of coercion or duress and found that threat of criminal prosecution did not constitute duress.

---

[4] Plaintiff's statements leave the impression that employment with the District was the only way she could serve the additional year to obtain maximum benefits. Under the Oklahoma statutes that define qualifying employers and employment for the Teachers' Retirement System of Oklahoma, 70 Okla Stat. §§ 17-101, 17-103, membership in the Teachers' Retirement System of Oklahoma includes all classified personnel (teacher, principal, superintendent, supervisor, etc) employed in public schools in Oklahoma. It appears, therefore, that employment with the District was not the exclusive means for Plaintiff to acquire the additional year of service.

[5] Although unpublished orders and opinions generally are not considered binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel, such an order or opinion may be relied on for the purpose of disposing of the issue presented if it has persuasive value with respect to a material issue in a case and would assist the court in its disposition. *See* 151 F.R.D. 470 (10th Cir.1993) (containing General Order of November 29, 1993); 10th Cir. R. 32.1 (2015).

*Id.* at 8. The Court noted as an example of such extreme duress a situation where police officers were not allowed to leave an interrogation room until they resigned, were forced to make their decisions on the same day while defendants interrogated them, were not permitted to select the date of their resignations, and were denied requests to speak with their attorneys, supervisors, and families. *Id.*

In *Parker*, 981 F.2d at 1162, the Tenth Circuit stated "[a] resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to exercise free choice." A discussion of the factors the *Parker* Court said are to be considered and their applicability to this case follow.

<u>Whether the employee was given some alternative to resignation</u>. Plaintiff was given the choice of having a hearing before the Board of Education or signing the Resignation Agreement and receiving her pay and benefits through the end of the contract period. The court finds that, although the alternative may have been unpalatable to Plaintiff, she was given an alternative to resignation.

<u>Whether the employee understood the nature of the choice given</u>. Plaintiff argues that she could not have understood her choice because she did not receive written notice for the disciplinary action taken against here, and she was not represented by counsel at the time. These factors do not establish that Plaintiff did not, in fact, understand her choice. In her deposition Plaintiff admitted she was verbally informed about the reasons for her suspension and the request for her resignation. [Dkt. 33-1, p. 61, ln. 6-21; p. 66, ln 25 through p. 67, ln. 9]. Moreover, Plaintiff did receive written notice about her performance problems in the form of several PDP. In addition, Plaintiff could have consulted an attorney before signing the Resignation Agreement, but did not. Further, Plaintiff could have

revoked her resignation within 7 days of signing the Resignation Agreement, but did not. The court finds that Plaintiff understood the choice she was given.  <u>Whether the employee was given a reasonable time in which to choose</u>.  Plaintiff asked for and was granted additional time, until noon the following day, to choose.  During this time Plaintiff took the opportunity to discuss the matter with her partner and a financial advisor.  Except for her argument that the time allotted did not comply with the OWBPA, Plaintiff does not contend that she had insufficient time to choose.

<u>Whether the employee was permitted to select the effective date of the resignation.</u> Plaintiff did not select the effective date of the resignation.  However, Plaintiff's resignation was effective on the last day of her then existing contract with the District.  There was no later date available for the effective date of the resignation.

Under the circumstances of this case, the court finds that Plaintiff voluntarily chose to resign and was not coerced or constructively discharged.  Since Plaintiff voluntarily resigned there was no deprivation of her property interest in her employment.  There was, under the undisputed facts of this case, no violation of due process because Plaintiff chose to end her employment without availing herself of the hearing process available to her.  The district is therefore entitled to summary judgment.[6]

---

[6] The conclusion that Plaintiff's resignation and consequent waiver of due process was voluntary eliminates the necessity of addressing the District's argument that Plaintiff ratified the Resignation Agreement.

## **CONCLUSION**

The court finds that there is no genuine dispute as to any material fact related to violation of due process in regard to the suspension of Plaintiff's employment and her resignation. The court further finds that the District is entitled to judgment as a matter of law.

Defendant Tulsa School District's Motion for Summary Judgment is hereby GRANTED. The case is hereby DISMISSED with prejudice. A separate judgment will be entered this date.

SO ORDERED this 9th day of February, 2017.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE